IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| ANTONIO BATTLE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:19-CV-190 |
| | : | |
| GEORGIA DEPARTMENT OF JUVENILE JUSTICE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Motion) (Doc. 21). For the reasons set forth below, Defendant's Motion is **DENIED**.

## PROCEDURAL BACKGROUND

On November 1, 2019, Plaintiff Antonio Brown initiated the instant action against the Georgia Department of Juvenile Justice alleging disability discrimination in violation of Title I of the Americans with Disabilities Act, as amended (ADA), 42 U.S.C. §§ 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.* (Doc. 1 ¶ 1). Plaintiff's claims arise from his allegedly unlawful termination while on a contingent leave of absence due to his disability. (*Id.* ¶¶ 20, 27).

On February 4, 2021, Defendant filed the instant Motion for Summary Judgment (Doc. 21). Plaintiff filed his Response to Defendant's Motion on March 25, 2021 (Doc. 28), Defendant filed its Reply Brief on April 7, 2021 (Doc. 29), and Plaintiff filed his Surreply Brief on April 27, 2021 (Doc. 33). The Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends that no genuine issue of material fact remains, and the party is

entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade County*, 552 F. App'x 902, 904 (11th Cir. 2014) (per curiam) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc)).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Allen*, 121 F.3d at 646. The Court shall "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009) (per curiam). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See*

*Celotex*, 477 U.S. at 322–24; *Barreto*, 331 F. App'x at 673; *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form" (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999))). "When that burden has been met, the burden shifts to the nonmovant . . . to go beyond the pleadings and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 556–57 (11th Cir. 2014) (per curiam) (citations omitted). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see also Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

Middle District of Georgia Local Rule 56 further requires that "documents and other record materials relied upon by [the moving party] be clearly identified for the court." M.D. Ga. L.R. 56 "Material facts not supported by specific citation to particular parts of materials in the record and statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court." *Id.*

## FACTS

From 2011 to 2018, Plaintiff served as a Juvenile Correction Officer (JCO) with the Defendant, Georgia Department of Juvenile Justice (DJJ). (Doc. 21-1 ¶¶ 3, 5). In 2015, Plaintiff injured his knee while performing a restraint technique on a youth, and Defendant granted him "light duty" in May 2015. (*Id.* ¶¶ 20–21). The "light duty" consisted of Plaintiff working an eight-hour shift instead of a twelve-hour shift, working a Monday–Friday shift, and working duties such as doing laundry, picking up trash, and staffing one of the sub-control rooms. (*Id.* ¶¶ 22–25).

Plaintiff was injured on the job again in February 2017 while responding to another altercation with a youth. (*Id.* ¶ 34). Consequently, Plaintiff could not perform the

full duties of a JCO and could only perform "light" or "modified" duties. (*Id.* ¶ 35). Because Plaintiff could not perform his full JCO duties and had exhausted his FMLA entitlement in October 2016, he applied for contingent leave without pay on November 11, 2017. (*Id.* ¶¶ 26, 36; Doc. 21-15). Contingent leave allows an employee temporarily to retain their status as an employee (and their employee health benefits) but does not guarantee the employee a position upon their return to work. (Doc. 21-1 ¶ 38; Doc. 21-12 at 1, 4–5). Defendant states that "[c]ontingent [l]eave is not a legally mandated form of leave," is typically limited "to a maximum of one year," and "while exceptions may be made, they are rare[.]" (Doc. 21-1 ¶¶ 37, 39). Defendant approved Plaintiff's request for contingent leave on December 11, 2017, to be effective through December 31, 2017. (Doc. 29-1 ¶ 7).

While Plaintiff was on contingent leave, he complained at various times that he was not permitted to return to work under a light duty arrangement and expressed interest in being moved into a new, non-security position. (Doc. 21-1 ¶¶ 41–43). Defendant asserts that it evaluated alternative employment opportunities for Plaintiff and determined there were no vacant non-security positions open for which Plaintiff was qualified. (*Id.* ¶ 51). Plaintiff states that he submitted a written application for a vacant secretary position in the human resources department but was never granted an interview. (Doc. 28-1 ¶ 51). Defendant contends that it has no record of Plaintiff submitting a written request to be transferred into a new position as an accommodation. (Doc. 22-1 ¶ 44). Plaintiff argues that no record exists because he applied for the job through the Department's old internal web portal, which is no longer in use and is not searchable. (Doc. 28-1 ¶ 46). Defendant acknowledges it stopped using that system in late 2018, and it is not searchable. (Doc. 21-19 ¶ 7).

On January 11, 2018, Plaintiff filed a request for his contingent leave to be extended through July 5, 2018. (Doc. 21-13 at 1; Doc. 29-1 ¶ 9). Defendant approved the extension as requested on January 11, 2018, but later revised the leave period to instead expire on March 31, 2018. (Doc. 29-1 ¶¶ 9–10). Defendant states it mailed Plaintiff a

4

letter notifying him that his contingent leave would end on March 31, 2018, and that because it did not have a vacant position to offer him as an accommodation, Plaintiff "would need to find another job or he would be separated from employment with [the Department]." (Doc. 21-1 ¶ 52). There is a dispute about whether Plaintiff ever received the March 8, 2018 letter. Defendant claims it mailed the letter to Plaintiff at his correct address. (*Id.* ¶¶ 52–53). Plaintiff claims that he never received the letter, it was not sent via certified mail, and he never signed for it (Doc. 28-1 ¶¶ 52–53). Plaintiff admits that the letter listed his correct address but testified that all previous letters sent from Defendant were sent by certified mail and he had to sign for them. (Doc. 25 at 74). Defendant does not address Plaintiff's assertions. (Doc. 29-1 ¶ 19). Plaintiff maintains that he did not learn that his medical leave would end on March 31, 2018 until he was notified on April 2, 2018—after his employment was terminated. (Doc. 28-1 ¶ 52). Because he did not receive the March letter notifying him his contingent leave end date had changed, letter, Plaintiff continued to believe his leave did not expire until July 5, 2018, and thus had no immediate reason to contact Defendant about vacant positions. (Doc. 28-1 ¶ 54).

## DISCUSSION

Plaintiff asserts a claim against Defendant for violation of Title I of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (Doc. 1 ¶ 1). The ADA prohibits employers from discriminating against a qualified individual on the basis of disability. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1214 (11th Cir. 2021) (citing 42 U.S.C. § 121112(a)). The Rehabilitation Act similarly prohibits federally funded programs from discriminating on the basis of a disability. *See Sutton v. Lader,* 185 F.3d 1203, 1207 (11th Cir. 1999) (citing 29 U.S.C. § 791).

Courts analyze "claims brought under the ADA and Rehabilitation Act using the same legal framework." *Todd*, 998 F.3d at 1214 (citing *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997)). To survive the Defendant's Motion for

Summary Judgment, Plaintiff must offer "either direct or circumstantial evidence" that "would allow a reasonable jury to find that [Defendant] terminated [Plaintiff's] employment and thus discriminated against [him] because of [his] disability." *Id.* (citation omitted). In the absence of direct evidence of discrimination, Plaintiff may establish a prima facie case of an ADA violation by showing that he: (1) has a disability, (2) is otherwise qualified for the position, and (3) was discriminated against because of his disability. *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (citation omitted). "The plaintiff retains at all times the burden of persu[asion] . . . that reasonable accommodations were available. The employer, on the other hand, has the burden of persuasion on whether an accommodation would impose an undue hardship." *Holbrook*, 112 F.3d at 1526 (first citing *Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996); and then citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996)).

### I. Disability

As to the first prong, under the ADA and Rehabilitation Act, a "disability" is: (1) "a physical or mental impairment that substantially limits one or more of an individual's major life activities;" (2) a "record of such an impairment," or (3) "being regarded as having such an impairment." *Mazzeo*, 746 F.3d at 1268 (quoting 42 U.S.C. § 12102(1)); *see also* 29 U.S.C. § 705(20)(B). Defendant does not dispute that Plaintiff has established that he is physically disabled. (Doc. 21-1 ¶ 31).

### II. Qualified

As for the second prong, there is a genuine issue of material fact as to whether Plaintiff was otherwise qualified for the position he sought as an accommodation. For Rehabilitation Act claims, "[w]hen an employee seeks reassignment as a reasonable accommodation for a disability, the relevant question when deciding whether []he is a qualified individual is not whether the employee is qualified for h[is] current position, but whether []he is qualified for the new job." *EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1344 (11th Cir. 2016) (citation omitted). Plaintiff argues that he was qualified for

five open jobs: (1) staffing the operational control rooms, (2) front desk check-in duty, (3) sanitation/laundry duties, (4) chemical control duty, and (5) a HR secretary position. (Doc. 21-23). The first four items on Plaintiff's list are not actual jobs within the Department, rather they "are all possible forms of 'light duty' for JCOs who are temporarily unable to perform their full duties." (Doc. 21-2 at 12 (first citing Doc. 21-10 ¶¶ 8-10; and then citing Doc. 21-12 ¶¶ 11-13)).

As for the HR secretary position, that is an actual position with identifiable criteria. The minimum requirements for the HR secretary position are a "High School Diploma or GED [and] Two years of general office of administrative experience." (Doc. 21-20; *see also* Doc. 28-4 ¶ 10). The parties dispute whether Plaintiff actually meets these criteria. In his Declaration, Plaintiff asserts that he

> obtained two years of general office or administrative experience while working for Aarons' Sales and Lease and Renter Center, Cooper Lighting, as well as working for Defendant for 7 years. While working for Aarons, part of my job duties included performing office and administrative job duties such as, customer service, customer care spreadsheets, scheduling appointments, documenting sales, and delivery in the various computer software systems such as Microsoft Office, Microsoft Word and Excel. I was also responsible for making delivery arrangements, accepting, and documenting payments of rent as well as doing collections and performing repossession when necessary.

(Doc. 28-4 ¶ 11). Defendants argue that Plaintiff's prior work experience does not equate to two years of general office or administrative experience. Dana Kilpatrick, who has held the role of Human Resources Director of the DJJ from January 2019 to present, testified that "[b]ased on my review of Mr. Battle's educational and employment history, Mr. Battle would not be qualified for the HR secretary position even if he had applied because he lacks administrative experience." (Doc. 21-19 ¶ 8). Margaret Miller, a former Employee Relations employee at the Human Resources Division of the DJJ, attests that she reviewed Plaintiff's credentials "as described in his interrogatory responses," and if

the HR secretary position was open, Plaintiff "would not have been qualified." (Doc. 21-12 ¶ 19).

Plaintiff complains that Defendant cannot rely on his response to the Interrogatory because "that interrogatory does not remotely allow one to look at [Plaintiff's] response and determine whether or not he had any office or administrative experience." (Doc. 28-3 at 8 (citing Doc. 21-8)). This, however, is not true. Interrogatory 2 asks Plaintiff to:

> Please **outline your entire employment history**, up to the present time, **including** the dates of employment, **the position held, description of duties**, the address and phone number of the employer, name of each supervisor, and your reason for leaving each employer., the address and phone number of the employer, name of each supervisor, and your reason for leaving each employer.

(Doc. 25-2 at 3–4). Had Plaintiff responded to this Interrogatory in full, the information provided certainly would have allowed an experience human resources employee to determine whether Plaintiff had the requisite qualifications. Plaintiff also attempts to make much of what questions were not asked of Plaintiff to elicit facts on this issue. Plaintiff, however, carries the burden of establishing a prima facie case; and it is, therefore, Plaintiff's burden to establish that there is a genuine issue of material fact on the question of whether he is qualified. As we are at the summary judgement stage, Defendant, the movant, must only establish that, after adequate time for discovery, there is an absence of evidence to support an element of Plaintiff's case. *See Celotex*, 477 U.S. at 325. Plaintiff, the non-movant, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted); *Samples v. City of Atlanta*, 846 F.2d 1328, 1330–31 (11th Cir. 1988). It is not enough to merely allege the existence of some factual dispute; instead, Plaintiff must rebut any facts properly presented by way of affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *See Anderson*, 477 U.S. at 247–48.

Plaintiff's conclusory statement, without more, that the various tasks he performed over the course of several jobs should have been sufficient to satisfy the requirement for two years of general office or administrative experience is not proper rebuttal. "The plaintiff bears the burden of showing []he is able to perform the essential functions of [the] job." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004) (citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002)). But "[t]he ADA requires [courts] to consider 'the employer's judgment as to what functions of a job are essential[.]'" *Id.* (alteration in original) (quoting 42 U.S.C. § 12111(8)). "The employer describes the job and functions required to perform that job." *Id.* (citation omitted); *see also Whillock v. Delta Airlines, Inc.*, 926 F. Supp. 1555, 1563 (N.D. Ga. 1995) ("[E]mployers . . . have the right to define the essential functions of a job." (first citing *Johnston v. Morrison, Inc.*, 849 F. Supp. 777, 778 (N.D. Ala. 1994); then citing 42 U.S.C. § 12111(8); and then citing 29 C.F.R. 1630.2(n)(3)(i))). As Judge Hamilton of the Court of Appeals for the Seventh Circuit noted in a dissent,

> if courts are to rely on employers' job descriptions and judgment, employers must describe the essential functions with enough specificity to tell the employee and courts what the job entails and, in ADA litigation, what the employee must show to establish that []he can do the job. And an employer's description of the job functions must . . . not [be] vague . . . .

*Kotaska v. FedEx Corp.*, 966 F.3d 624, 635 (7th Cir. 2020) (Hamilton, J., dissenting).

Here, Defendant's minimum qualifications require a "[h]igh school diploma or GED [and t]wo years of general office or administrative experience." (Doc. 21-20 at 1). Defendants fail, however, to adequately define what constitutes two years of general office or administrative experience. While two of Defendant's human resources employees—one current and one former—who were aware of the necessary qualifications of the secretarial position and who reviewed Plaintiff's personnel file and Plaintiff's listing of previous positions and job duties as set forth in his Response to Interrogatory 2, declared that Plaintiff was not qualified for the secretarial position,

without evidence of what Defendant would have accepted as two years of general office or administrative experience, the Court cannot find that there is no genuine issue as to this material fact on this point. Thus, viewing the facts in the light most favorable to Plaintiff, a genuine issue of material fact arises because neither party has pointed to any evidence explaining what constitutes "two years of general office or administrative experience." *See, e.g.*, *Shaw v. Ill. SportServ., Inc.*, No. 19 C 8415, 2021 WL 3487348, at *6–7 (N.D. Ill. Aug. 9, 2021) (finding that when a defendant-employer did "not clarify the level of math that [was] required for [a] position" the plaintiff-employee "ha[d] 'put forth enough facts to create a jury question' regarding the prerequisites of the . . . position and whether [he] c[ould] satisfy them." (quoting *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 930 (7th Cir. 2001))); *Castaneda v. E. Otero Sch. Dist. R-1*, No. CIVA04CV01595EWNBNB, 2005 WL 3280240, at *14 (D. Colo. Dec. 1, 2005) (finding that there were genuine issues of material fact "regarding the essential functions of [a] . . . position" when defendant failed to argue or define whether plaintiff could perform the essential functions).[1]

### III. Discrimination and Pretext

Defendant next argues that even if Plaintiff stated a prima facie case of disability discrimination, summary judgment should be granted because: (1) the interactive process broke down through no fault of DJJ and (2) DJJ had a legitimate, nondiscriminatory reason for terminating Plaintiff. (*See* Doc. 21-2 at 13–20).

### A. Breakdown in the Interactive Process

"Under the ADA, an employer will not be liable for failure to accommodate if the employee is responsible for the breakdown of the interactive process." *D'Onofrio v.*

---

[1] The Court also notes there is a factual dispute as to whether Plaintiff actually applied for the HR Secretary Position. Defendant is unable to dispute Plaintiff's allegation regarding his application because the online job system Plaintiff used is no longer in service or searchable. (*See* Doc. 21-19 ¶ 7). Based on the evidence, there is a genuine dispute a material fact as to whether Plaintiff did apply for the position, which would have triggered Defendant's "duty to provide a reasonable accommodation, engage in the interactive process, or show undue hardship." *Grant v. Hosp. Auth. of Miller Cnty.*, 1:15-CV-201 (LJA), 2017 WL 3527703, at *7 (M.D. Ga. Aug. 16, 2017) (citing *Bagwell v. Morgan Cnty. Comm'n*, 676 F. App'x 863, 866–67 (11th Cir. 2017) (per curiam)).

*Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020) (citation omitted), *cert. denied*, 141 S. Ct. 1435 (2021) (mem.). For example, the Eleventh Circuit held that a plaintiff "caused a breakdown in that process where she failed to provide any medical documentation outlining her work limitations or any substantive reason explaining why the proposed alternative accommodation was unreasonable." *Gilliard v. Georgia Dep't of Corrs.*, 500 F. App'x. 860, 870 (11th Cir. 2012) (per curiam).

Again, there is a genuine dispute of material fact as to whether Plaintiff caused the breakdown in the interactive process. Tamekia Foster, a DJJ HR Technician, testified that Plaintiff "inquired about" a position in the human resources department, and that there were two available positions. (Doc. 24 at 36:6-8). Additionally, Plaintiff submitted his second Leave Without Pay on January 1, 2018, and it was approved on January 11, 2018. (Doc. 21-13 at 1). The second Leave Without Pay document shows that Plaintiff's leave would last through July 5, 2018. (*Id.*). In Defendant's March 8, 2018 letter, Defendant states that it "will allow [Plaintiff] until March 31, 2018, to secure employment; if not, we will separate you from employment effective April 1, 2018." (Doc. 21-16). In its April 2, 2018 letter terminating Plaintiff, Defendant advised Plaintiff that he was "previously approved for Contingent Leave Without Pay beginning January 1, 2018 to March 31, 2018." (Doc. 21-21). Defendant does not explain why his leave date was changed, and it appears that the first reference to Plaintiff's leave ending on March 31, 2018 was in the March 8, 2018 letter, which Plaintiff asserts he never received. (*See* Doc. 21-1 ¶¶ 52–53; Doc. 28-1 ¶¶ 52–53; Doc. 28-2 ¶ 19). Since Plaintiff contends he did not receive this letter, he had no reason to contact DJJ about other specific job opportunities because he understood that his medical leave did not expire until July 5, 2018. (Doc. 28-1 ¶ 54). Plaintiff states that "[t]he reason [he] requested his leave be extended until July 5, 2018 was due to the fact that the plaintiff was not scheduled to revisit his doctor until then and, therefore, there were no medical updates he could provide the DJJ." (Doc. 28-1 at 10 n.4).

11

Plaintiff offers evidence that he applied for accommodations, engaged with his employer regarding alternative accommodations, expressed his desire to be given a specific different accommodation, and that he did not receive notice that he would be terminated until after his termination. Since Plaintiff testified that he was not aware that his medical leave would end until after he was terminated, there is a genuine issue of material fact as to whether Plaintiff caused the breakdown in the interactive process.

### B. Defendant's Nondiscriminatory Reasoning

Because the Court finds that there are genuine disputes of material fact as to whether Plaintiff was qualified for the HR secretary position and who was responsible for the breakdown in the interactive process, the Court need not address whether Defendant's proffered legitimate, nondiscriminatory reason for terminating Plaintiff was sufficient or pretextual.

### CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. 21) is **DENIED**.

**SO ORDERED**, this 30th day of September, 2021.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**